Dexter GILL and Anne Marie Samuel,
Plaintiffs–Appellants,

v.

NEW YORK CITY TRANSIT AU-
THORITY and Alvin Bryant,
Defendants–Appellees.

No. 05–5756–cv.

United States Court of Appeals,
Second Circuit.

Feb. 2, 2007.

Brian J. Isaac (Kenneth Gorman, of counsel), Pollack, Pollack, Isaac & De Cicco, New York, New York, for Appellants.

Steve S. Efron (Wallace D. Gossett, on the brief), New York, New York, for Appellees.

PRESENT: Hon. SONIA SOTOMAYOR, Hon. PETER W. HALL, Circuit Judges, Hon. JOHN G. KOELTL, District Judge.*

## SUMMARY ORDER

Plaintiffs-appellants Dexter Gill and Anne Marie Samuel appeal from the October 5, 2005 judgment of the United States District Court of the Eastern District of New York (Dearie, J.), granting defendants-appellees' motions for summary judgment on plaintiffs' claims in this personal injury action and to exclude plaintiffs' expert reports. We assume the parties' familiarity with the facts of this case, its relevant procedural history, and the issues on appeal.

■ Reviewing the summary judgment determination *de novo, see Savino v. City of New York*, 331 F.3d 63, 71 (2d Cir.2003), we find that the district court erred in determining that "there is no genuine issue as to any material fact," Fed.R.Civ.P. 56(c). Indeed, in "construing the facts in the light most favorable to the non-moving party," *Tocker v. Philip Morris Cos., Inc.*, 470 F.3d 481, 486 (2d Cir.2006), it is clear to us that disputed facts remain, including, whether and when Alvin Bryant became unconscious and how far the bus traveled once Bryant lost consciousness. Bryant has stated that while driving on 120th Avenue, he "blacked out" when "pulling into the bus stop at 200th Street" and that somehow "the bus went back into the street and went like three blocks and hit a tree." [1] He testified further that right be-

---

* The Honorable John G. Koeltl, United States District Judge of the United States District Court for the Southern District of New York, sitting by designation.

1. The district court concluded that the distance traveled from the bus stop to the crash site was only 100 feet. Though the diagram to which the district court cites is a reconstruction of the accident, it does not purport so far as we can tell to show the path of the bus from the 200th Street bus stop, where Bryant testified he lost consciousness, to the intersection of 120th Avenue and Nashville Boulevard, where the bus hit the tree. This fact is disputed and should have been taken in plaintiffs' favor.

fore making the stop at 200th Street, he felt "a hot flash from the pit of his neck to the top of his head."

Plaintiffs argue that Bryant "simply could not have been unconscious" from the 200th Street stop to the site of the accident because an unconscious driver would have been unable to pull out of the stop and negotiate three city blocks without hitting anything. We do not read their argument, as the district court did, to challenge only whether Bryant lost consciousness but understand it mainly to focus on when he lost consciousness. Plaintiffs assert the blackout occurred, if ever, after he allegedly made the conscious decision to pull out of the bus stop and continue on his route rather than at the time he experienced the hot flash. Construing the evidence in the light most favorable to the plaintiffs as nonmoving parties, we agree with plaintiffs that reasonable jurors could disagree whether Bryant in fact lost consciousness before the accident. Also, we agree that reasonable jurors could infer that Bryant had experienced the hot flash, but proceeded to drive the bus after which he fell unconscious and caused the accident.[2] Thus, there are issues of material fact whether Bryant experienced an unforeseen medical emergency such that he cannot be chargeable with negligence. *McGinn v. New York City Transit Auth.*, 240 A.D.2d 378, 658 N.Y.S.2d 121, 122 (2d Dep't 1997) (driver "who experiences a sudden medical emergency will not be chargeable with negligence provided that the medical emergency was unforeseen") (internal quotation marks omitted). Accordingly, the motion for summary judgment should not have been granted.

■ The district court also excluded all of plaintiffs' proffered expert reports; we reverse such determinations only where they are "manifestly erroneous." *Raskin v. Wyatt Co.*, 125 F.3d 55, 65–67 (2d Cir. 1997). As to the Bellizzi report, we agree with the district court that the report does not explain the methodology used to reach its various conclusions. Moreover, at oral argument, plaintiffs specifically conceded that a reasonable juror did not require expert testimony to determine whether a bus could travel three city blocks without a conscious driver. Certainly, we cannot say that the court was manifestly erroneous in excluding the Bellizzi report.

■ As to the Bender report, the district court found that a jury did not need a neurologist's testimony to decide whether Bryant could have driven the bus three city blocks while unconscious, and, as noted above, plaintiffs conceded this at oral argument. We do not agree, however, with the district court that Dr. Bender failed to "explain his basis for drawing links between the 1997 and 1999 incidents and his statement that Mr. Bryant 'had a well-documented condition of intermittent altered consciousness' " prior to the accident. Dr. Bender clearly enumerated in his report the various instances where Bryant had indicated feeling lightheaded, dizzy, or "in a haze," and indicated that the possible diagnoses from such symptoms could have lead to the blackout episode in 1999 that caused the accident. Additionally, the district court did not explain why it excluded the report's conclusion that Bryant's inability to remember what happened between the 200th Street bus stop and the accident site may in fact be "postconcussion amnesia," an apparently "defin-

**2.** Even defendants concede that such facts, if proven, "might be troubling." This conclusion is further buttressed by other facts in the record, including testimony from eyewitnesses that Bryant appeared sickly and was sweating and that he had stopped the bus for five minutes at the 200th Street stop before continuing along the route. In addition, according to a fellow employee, Bryant himself admitted after the accident that "he was having problems" and that "he felt he shouldn't have been driving a bus."

ing characteristic of a concussion following a head injury." This determination would seem to corroborate the fact that Bryant may not have lost consciousness until after the 200th Street bus stop. It was, we find, manifestly erroneous to exclude the portions of the Bender report relating to the issues of altered consciousness as well as post-concussion amnesia.

█ Finally, as to the Shields report, the district court excluded it because Dr. Shields provided no basis for assuming that Bryant had suffered a seizure in 1997, having merely "list[ed] a number of medical conditions that could have caused Mr. Bryant's symptoms." The district court, however, misconstrued the thrust of the report. In essence, Dr. Shields opines that the proper working diagnosis of the 1997 incident should have been seizure and that other tests should have been done to verify that diagnosis and eliminate other common causes. Dr. Shields concludes that until such tests were completed, the New York City Transit Authority (the "Authority") should have presumed seizure as the cause. That opinion, if credited, would support a finding that the Authority was certainly on notice that Bryant might be suffering from a medical condition that made this accident foreseeable. Given this, we find both that the Shields report provides sufficient information to support its material conclusion and that the district court erred in excluding it.

Given the above, the district court erred in granting summary judgment and in excluding the Shields report and certain portions of the Bender report. We therefore VACATE the district court's October 5, 2005 judgment, and REMAND the case for proceedings not inconsistent with this order.